**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Caitlin Persis Deighan, *et al.*<br><br>Defendants. | No. MJ-17-0340-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court is Defendants Caitlin Persis Deighan, Zoe E. Anderson, Logan Thomas Hollarsmith, and Rebecca Katie Grossman-Richeimer's (collectively "Defendants") Motion to Compel (Doc. 54). The Government has filed its response, and Defendants have replied. Govt.'s Response in Opp. Defs.' Mot. to Compel (Doc. 60); Defs.' Reply in Support of Defs.' Mot. to Compel (Doc. 61). Defendant Caitlin Persis Deighan is charged with one (1) count of operating a motor vehicle in a wilderness area, and all Defendants are charged with one (1) count of entering a national wildlife refuge without a permit. Information (Doc. 1).

On April 17, 2018, oral argument was held before Magistrate Judge Macdonald regarding the motion. Minute Entry 4/17/2018 (Doc. 62). The Court took the matter under advisement. Subsequent to the hearing Defendants Caitlin Deighan, Rebecca Grossman-Richeimer, and Logan Hollarsmith filed Notices of Declaration in Support of Religious Freedom (Docs. 65, 66 & 67). In response, the Government filed a Motion to

Strike Defendants' Notices of Declaration (Doc. 68). Defendant Zoe Anderson also filed a Notice of Declaration in Support of Religious Freedom (Doc. 72). The Government filed a Motion to Strike Defendant's Notice of Declaration (Doc. 73) for Defendant Anderson, as well. Defendants Deighan, Anderson, Hollarsmith, and Grossman-Reichmer responded to the Government's motion to strike their respective affidavits. (Docs. 70 & 76). Accordingly, the motions are ripe for adjudication.

**I.   FACTUAL BACKGROUND**

The Court outlined the relevant factual background in its May 2, 2018 Order (Doc. 72), but reiterates it here for consistency.

On July 19, 2017 Federal Wildlife Officer ("FWO") Jose Valenzuela received information of individuals in an area called Charlie Bell Pass/Well of the Cabeza Prieta National Wildlife Refuge. Govt.'s Aff. (Doc. 18) at 2.[1] At approximately 7:30 p.m., FWO Valenzuela received a call to investigate trespassing in a designated wilderness area of Charlie Bell area which is located on the Cabeza Prieta National Wildlife Refuge. *Id.* at 2. While en route to the Charlie Bell area, FWO Valenzuela heard radio traffic between Border Patrol dispatch and a Border Patrol agent in the area. *Id.* At the refuge exit, a Border Patrol agent was following a white vehicle when FWO Valenzuela met them. *Id.*

The driver was identified as Caitlin Persis Deighan, and the three passengers were identified as Logan Thomas Hollarsmith, Zoe E. Anderson, and Rebecca Katie Grossman-Richeimer. *Id.* at 2–3. FWO Valenzuela's affidavit is unclear regarding whether the Defendants had visitor permits in their possession; however, the indictment is clear that Defendants did not have valid permits. Govt.'s Aff. (Doc. 18) at 3; *see* Indictment (Doc. 1). Defendant Deighan admitted driving down to the well past the signs saying "government use only." Govt.'s Aff. (Doc. 18) at 3. Defendants stated that they had not noticed any signs. *Id.* During FWO Valenzuela's recording of Defendants

---

[1] The court relies on the ECF pagination for pinpoint citations.

identification and vehicle information, the Border Patrol agent interviewed the individuals about damage to a United States Border Patrol camera. *Id.* at 3–4.

At oral argument, counsel for Defendants confirmed that they had not sought to obtain permits prior to the July 19, 2017 incident. *See* Hr'g Tr. 4/17/2018 (Doc. 69) at 14:15–15:18, 39:11–41:1. Counsel also noted that in the instant case, the Defendants were allegedly actively engaged in a search and rescue operation. *Id.* at 39:11–41:1.

## II. ANALYSIS

Defendants seek an order compelling the Government to provide discovery that they allege is relevant to the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1, their selective prosecution claim, an entrapment by estoppel defense, and a necessity defense. Defs.' Mot. to Compel (Doc. 54) at 4–10.

### A. Federal Rules of Criminal Procedure 16

Rule 16, Federal Rules of Criminal Procedure provides, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "Materiality is a necessary prerequisite to discovery." *United States v. USDC, Central Dist. of Cal., Los Angeles, Cal.*, 717 F.2d 478, 480 (9th Cir. 1983) (citations omitted). "Materiality is a 'low threshold; it is satisfied so long as the information ... would have helped' to prepare a defense. *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (quoting *United States v. Hernandez–Meza*, 720 F.3d 760, 768 (9th Cir. 2013)). However, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would . . enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (citations omitted). "An abstract

logical relationship to the issues in the case is not, however, sufficient to force the production of discovery under rule 16." *United States v. George*, 786 F.Supp. 56, 58 (D.D.C. 1992) (quotations and citations omitted). "The documents at issue must play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal." *Id.* (quotations and citations omitted).

### *B. Religious Freedom Restoration Act ("RFRA")*

"RFRA supplies a rule of decision in cases where a person finds himself in the unfortunate position of needing to choose between following his faith and following the law." *United States v. Christie*, 825 F.3d 1048, 1055 (9th Cir. 2016). "The mere fact that [a person's] religious practice is [substantially] burdened by a governmental program does not mean that an exemption accommodating his practice must be granted." *Id.* (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 625 (1981)) (alterations in original). In order for a RFRA defense to prevail, defendants must "demonstrate that the beliefs they espouse are actually religious in nature (rather than philosophical or political, for example); that they sincerely hold those beliefs, and do not simply recite them for the purpose of draping religious garb over [political] activity[.]" *Christie*, 825 F.3d at 1056. Upon such a showing, "the government must demonstrate that forcing the religious objector to comply with the law is both 'in furtherance of a compelling governmental interest' and is 'the least restrictive means of furthering that compelling governmental interest.'" *Id.* at 1055 (citing 42 U.SC. §2000bb-1(b) & (c)).

Subsequent to the hearing Defendants Holcomb, Huse, and Orozco-McCormick filed a Notice of Declaration in Support of Religious Freedom (Docs. 55, 57, & 61). In response to each of these, the Government filed a Motion to Strike Defendant's Notice of Declaration (Doc. 56, 59, & 63). Each Defendant avers that they have a moral, ethical, and spiritual belief to assist humans in need of basic necessities, and that they hold their beliefs "with the strength of traditional religious convictions." The Government seeks to strike each declaration as untimely and improper under the local rules of procedure.

- 4 -

Although improperly filed, the Court declines to strike Defendants' declarations.

It is undisputed that Defendants did not attempt to obtain permits for access to the Cabeza Prieta Wildlife Refuge. Neither did Defendants attempt to obtain a special use permit. As such, there was no denial based upon any purported religious belief.

Moreover, denial of vehicle access by Defendants to portions of the Cabeza Prieta National Wildlife Refuge does not "affirmatively compel[] [the Defendant], under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of [his] religious beliefs." *Wisconsin v. Yoder*, 406 U.S. 205, 218, 92 S.Ct. 1526, 1534 (32 L.Ed.2d 15 (1972) (citations omitted). Nor does the restriction prevent Defendant from receiving a governmental benefit. *See Navajo Nation v. United States Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008) (citing *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)).

Additionally, the Arizona-Mexico international border is approximately 373 miles long. *See* https://www2.census.gov/library/publications/2010/compendia/statab/130ed/tables/11s0359.pdf (last visited May 30, 2018). The Cabeza Prieta National Wildlife Refuge shares it southern boundary with Mexico for approximately 50 miles, or 13.4% of the total border. *See* http://cabezaprieta.org/geology.php (last visited May 30, 2018). Moreover, portions of the 860,000 acres of the Refuge are open to the public. *See* https://www.fws.gov/refuge/Cabeza_Prieta/about.html (last visited May 30, 2018). Defendants' proclaimed moral, ethical, and spiritual belief to assist humans in need of basic necessities appears to be a simple recitation "for the purpose of draping religious garb over [political or philosophical] activity[.]" *Christie*, 825 F.3d at 1056. Even if the Court accepts that Defendants attestations are truly religious beliefs, there has been no showing that the exercise of the same has been substantially burdened by the narrowly limited access in the Cabeza Prieta National Wildlife Refuge. *See Navajo Nation*, 535 F.3d at 1070 ("Any burden imposed on the exercise of religion short of that described by *Sherbert* and *Yoder* is not a 'substantial burden' within the meaning of RFRA."). As such, Defendants have failed to demonstrate that the information sought is material to

1 | their defense.

## C. Selective Prosecution

Defendants seek to assert a selective prosecution or selective enforcement defense at trial. Defendants seek a variety of information allegedly related to this defense, and rely on text messages between Fish and Wildlife personnel that suggest that eight (8) individuals from no more deaths sought permits, but three (3) were on the "do not issue" list. Defs.' Mot. to Compel (Doc. 54) at 6–8; Hr'g Tr. 4/17/2018 (Doc. 69) at 7:16–10:17.

Defendants argument is fatally flawed, because none of the Defendants in this case even sought to obtain permits before the July 19, 2017 incident. *See* Hr'g Tr. 4/17/2018 (Doc. 69) at 14:15–15:18, 39:11–41:1. It is purely speculative that Defendants would have been denied permits had they applied, or were otherwise targeted by law enforcement due to their affiliation with No More Deaths. Furthermore, Fish and Wildlife personnel do not decide whether or not to prosecute particular individuals; that decision is left to the United States Attorney's Office. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). Furthermore, "the decision to prosecute is particularly ill-suited to judicial review." *Id.* Finally, "[t]o obtain discovery on a selective prosecution claim the defendant[s] must first identify specific facts that establish a 'colorable' basis for both elements of the claim."[2] *United States v. Bourgeois*, 964 F.2d 935, 938 (9th Cir. 1992). Defendants have not met this burden. As such, the Court finds that the discovery sought is not material to their defense.

---

[2] "To succeed on a selective prosecution claim, the defendant bears the burden of showing both 'that others similarly situated have not been prosecuted and [also] that the prosecution is based on an impermissible motive.'" *United States v. Bourgeois*, 964 F.2d 935, 938 (9th Cir. 1992).

- 6 -

### D. Entrapment by Estoppel

Defendants seek disclosure related to an entrapment by estoppel defense, as well as that "related to the unauthorized 2017 amendment of the entrance permit to [the Cabeza Prieta National Wildlife Refuge] and other [Fish and Wildlife Service] regulatory violations connected to these charges." Defs.' Mot. to Compel (Doc. 54) at 8.

"Entrapment by estoppel applies when an official tells the defendant that certain conduct is legal and the defendant believes the official." *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987) (quotations and citations omitted). In support of this defense, it appears that Defendants are relying on an alleged statement from a former Assistant United States Attorney that "DOJ does not plan to prosecute [No More Deaths] volunteers for citations." Defs.' Reply (Doc. 61), Exh. "2" at 1. The discovery that they seek, however, is all related to the alleged unauthorized 2017 amendment of the entrance permit. Because Defendants never sought permits, any amendments to the regulations related to permitting are not material to their defense.

### E. Necessity

Defendants seek discovery for a broad range of video and audio recordings, data, and materials related to emergency or other calls to law enforcement and Fish and Wildlife related to the Cabeza Prieta Wildlife Refuge. Defs.' Mot. to Compel (Doc. 43) at 9–10.

"The defense of necessity does not arise from a 'choice' of several sources of action; it is instead based on a real emergency." *United States v. Dorrell*, 756 F.2d 427 (9th Cir. 1985) (quotations and citations omitted). Defendants have alleged that they were on a self-proclaimed "search and rescue operation" at the time of their arrest. Hr'g Tr. 4/17/2018 (Doc. 69) at 39:11–41:1. Their broad discovery request reaches far beyond any actual or perceived "real emergency," and is therefore not material to this defense.

## III. CONCLUSION

Based upon the foregoing, the Court finds Defendants' Motion to Compel Discovery (Doc. 54) is without merit.  Accordingly, IT IS HEREBY ORDERED that the Government's Motions to Strike Defendant's Notice of Declaration (Doc. 68 & 72) are DENIED.  IT IS FURTHER ORDERED that Defendants' motion (Doc. 54) is DENIED.

Dated this 1st day of June, 2018.

Honorable Bruce G. Macdonald
United States Magistrate Judge