**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Caitlin Persis Deighan, *et al.*<br><br>Defendants. | No. MJ-17-0340-TUC-BPV<br><br><br>**ORDER** |

Currently pending before the Court is Defendants Caitlin Persis Deighan, Zoe E. Anderson, Logan Thomas Hollarsmith, and Rebecca Katie Grossman-Richeimer's (collectively "Defendants") Motion to Dismiss Counts 1 & 2 Based on Necessity and the Emergency Exception to 50 C.F.R. § 35.5 (Doc. 78); Motion to Dismiss Charges for Violation of International Law (Doc. 79); Motion to Dismiss Count II Based on Due Process & Renewed Motion to Compel (Docs. 80 and 91); Motion to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Docs. 81 and 92); and Motion to Dismiss for Selective Enforcement, or Alternatively, for Further Discovery Regarding Same (Docs. 83 and 93). The Government has responded to each motion, and Defendants replied. Govt.'s Response in Opp. Defs.' Mot. to Dismiss Counts 1 & 2 Based on Necessity and the Emergency Exception to 50 C.F.R. § 35.5 (Doc. 108); Defs.' Reply in Support of Mot. to Dismiss Based on Necessity and 50 C.F.R. § 35.5 (Doc. 117); Govt.'s Response to Defs.' Mot. to Dismiss Charges for Violation of Int'l Law (Doc. 106); Defs.' Reply in Support of Mot. to Dismiss Charges for Violation of Int'l

Law (Doc. 118); Govt.'s Response to Defs.' Mot. to Dismiss Count II Based on Due Process & Renewed Mot. to Compel (Doc. 107); Defs.' Reply in Support of Mot. to Dismiss Count II Based on Due Process and Renewed Mot. to Compel (Doc. 119); Govt.'s Response to Defs.' Mot. to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Doc. 105); Defs.' Reply in Support of Mot. to Dismiss Charges Pursuant to the Religous [sic] Freedom Restoration Act (Doc. 120); Govt.'s Response to Defs.' Mot. to Dismiss for Selective Enforcement, or Alternatively, for Further Discovery Regarding Same (Doc. 109); Defs.' Reply in Support of Mot. to Dismiss for Selective Enforcement, or Further Discovery (Doc. 116). Defendant Caitlin Persis Deighan is charged with one (1) count of operating a motor vehicle in a wilderness area, and all Defendants are charged with one (1) count of entering a national wildlife refuge without a permit. Information (Doc. 1).

These cases raise issues similar to those previously considered by this Court in *United States v. Warren*, CR-18-00223-TUC-RCC (BPV). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument. The Court was recently reassigned to preside over these cases.

**I.      ADMINISTRATIVE ISSUE**

The pending motions include several duplicates resulting from the manner in which they were filed. *See* Motion to Dismiss Count II Based on Due Process & Renewed Motion to Compel (Docs. 80 and 91); Motion to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Docs. 81 and 92); and Motion to Dismiss for Selective Enforcement, or Alternatively, for Further Discovery Regarding Same (Docs. 83 and 93). As such the Court will administratively close the versions of each motion containing sealed documents—Motion to Dismiss Count II Based on Due Process & Renewed Motion to Compel (Doc. 80); Motion to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Doc. 81); and Motion to Dismiss for Selective

Enforcement, or Alternatively, for Further Discovery Regarding Same (Doc. 83).

## II. FACTUAL BACKGROUND

The Court has previously outlined the relevant factual background in the May 2, 2018 Order (Doc. 72) and reiterated it in the June 1, 2018 Order (Doc. 77). Those recitations are adopted herein by reference.

## III. ANALYSIS

### A. *Federal Rules of Criminal Procedure 12*

Rule 12, Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations and quotations omitted). "[A] district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* (citations omitted). "As the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be no assistance in determining the validity of the defense." *Id.* (citations omitted); *see also United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010). Accordingly, "the district court must decide the issue raised in the pretrial motion before trial if it is 'entirely segregable' from the evidence to be presented at trial." *Schortt Accountancy Corp.*, 785 F.2d at 1452 (citations omitted). "If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." *Id.* (quotations and citations omitted). As such, "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense."

*United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citations omitted). "[T]he unavailability of Rule 12 in determination of general issues of guilt or innocence . . . helps ensure that the respective provinces of the judge and jury are respected, . . . and that the facts are fully developed before disposition of the case." *Id.* at 670 (citations omitted).

### *B. Necessity and the Emergency Exception*

Defendants seek dismissal of the Information based upon a necessity defense, in which they allege any criminal liability should be removed because they were acting "to avoid serious harm to themselves or others." Defs.' Mot. to Dismiss Based Upon Necessity and the Emergency Exception (Doc. 78) at 2.

#### **1. Evidentiary Hearing**

As an initial matter, the Court finds it inappropriate to have an evidentiary hearing regarding Defendants' arguments for either a necessity defense or the applicability of the emergency exception. *See* Fed. R. Crim. P. 12(b)(1); *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citations omitted) (Rule 12(b) motion inappropriate for raising a factual defense). Any facts relevant to a necessity defense are "substantially founded upon and intertwined with evidence concerning the alleged offense[,]" and therefore any factual findings must be deferred until trial. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). To the extent that Defendants have admitted their illegal conduct, trial may be limited to the evidence of their affirmative defenses. *See* Defs.' Reply Re: Necessity and Emergency (Doc. 117) at 1–2. In any event, the Court finds that an evidentiary hearing regarding the same is unwarranted.

#### **2. Necessity**

"A district court may preclude a necessity defense where 'the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense.'" *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir. 1991) (quoting *United States v. Dorrell*, 758 F.2d 427, 430 (9th Cir. 1985)). "The defense of necessity does not arise from a 'choice' of several sources of action; it is instead based on

a real emergency." *Dorrell*, 758 F.2d at 431 (quotations and citations omitted). "Consequently, if there was a reasonable, legal alternative to violating the law, the defense fails." *Id.* (quotations and citations omitted). "To invoke the necessity defense, therefore, the defendants colorably must have shown that: (1) they were faced with a choice of evils and chose the lesser evil; (2) they acted to prevent imminent harm; (3) they reasonably anticipated a direct causal relationship between their conduct and the harm to be averted; and (4) they had no legal alternatives to violating the law." *Schoon*, 971 F.2d at 195 (citations omitted).

As an initial matter, "[t]he law could not function were people allowed to rely on the *subjective* beliefs and value judgments in determining which harms justified the taking of criminal action." *Schoon*, 971 F.2d at 197 (emphasis in original). "[E]xercise of a moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law. . . . Toleration of such conduct would [be] inevitably anarchic." *Id.* (quoting *United States v. Moylan*, 417 F.2d 1001, 1009–09 (4th Cir. 1969)) (alterations in original). Defendants describe the emergency as migrants lost and in distress on the Cabeza Wildlife Refuge. While the migrants may have been in some state of personal emergency, the Defendants were not and may not convert the migrants' emergency into their own. Moreover, Defendants cannot meet their burden to show that they had no legal alternatives to violating the law. In fact, after a 911 call was received, a helicopter was dispatched and two (2) of the individuals were located. *See* Govt.'s Response re Necessity and Emergency (Doc. 108) at 10. Because there was a legal alternative to address Defendants' concerns, they cannot establish a necessity defense, and their motion (Doc. 78) will be denied.

### **3. Emergency exception**

Defendants also seek dismissal based on the "emergency exception" to Section 35.5, Title 50, Code of Federal Regulations. Defs.' Mot. to Dismiss Based Upon Necessity and the Emergency Exception (Doc. 78) at 12–13. Section 35.5 provides as follows:

> Except as specifically provided and subject to existing private rights, there shall be no commercial enterprise and no permanent road within a wilderness unit, and except as necessary to meet minimum requirements for the administration of the area (including measures required in emergencies involving the health and safety of persons within the area), there shall be no temporary road, no use of motor vehicles, motorized equipment or motorboats, no landing of aircraft, no other form of mechanized transport, and no structure or installation within any such area.
>
> (a) The Director may authorize occupancy and use of a national wildlife refuge by officers, employees, agencies, and agents of Federal, State, and county governments to carry out the purposes of the Wilderness Act and the Act establishing the wilderness and will prescribe conditions under which motorized equipment, mechanical transport, aircraft, motorboats, installations, or structures may be used to meet the minimum requirements for authorized activities to protect and administer the wilderness. The Director may also prescribe the conditions under which such equipment, transport, aircraft, installations, or structures may be used in emergencies involving the health and safety of persons, damage to property, violations of civil and criminal law, or other purposes.
>
> (b) The Director may permit, subject to such restrictions as he deems desirable, the landing of aircraft and the use of motorized equipment at places within a wilderness where such uses were established prior to the date the wilderness was designated by Act of Congress as a unit of the National Wilderness Preservation System.

50 C.F.R. § 35.5. "[T]he plain meaning of a regulation governs" when the language is unambiguous. *Wards Cove Packing Corp. v. Nat'l Marine Fisheries Sv'c*, 307 F.3d 1214, 1219 (9th Cir. 2002).

Here, Defendants admit that the first subsection (subsection (a)) is inapplicable to them, because they are private citizens. Reply (Doc. 117) at 6–7. Defendants further admit that "subsection (b) has nothing to do with the use of motor vehicles in emergency situations." *Id.* at 7. As such, Defendants' argument relies entirely on the introductory paragraph of Section 35.5. In so doing, Defendants focus only on a portion of the paragraph, taking the reference to emergencies out of context. The plain language states that there shall be: 1) no commercial enterprise; and 2) no permanent road. 50 C.F.R. § 35.5. Then, except as necessary to meet minimum requirements for the administration of

the area (including measures required in emergencies involving the health and safety of persons within the area) there shall be: 3) no temporary road; 4) no use of motor vehicles, motorized equipment or motorboats; 5) no landing of aircraft; 6) no other form of mechanized transport; and 7) no structure or installation within any such area. *Id.* "[I]ncluding measures required in emergencies involving the health and safety of persons within the area" refers to the "minimum requirements for the administration of the area." As private citizens, Defendants have not suggested that they have a role in the administration of the Cabeza Wildlife Refuge, nor do the regulations provide them with an "emergency exception" to their allegedly criminal behavior. Accordingly, as to Defendants' purported defense based on an "emergency exception" provided by 50 C.F.R. § 35.5, Defendants' motion is denied.

### *C. International Law*

Defendants seek dismissal of the indictment, alleging that the "Protocol Against Smuggling of Migrants by Land, Sea, and Air renders their conduct non-criminal. Defs.' Mot. to Dismiss Charges for Violation of International Law (Doc. 79) at 4–8.

The stated purpose of the Protocol Against the Smuggling of Migrants by Land, Sea and Air, Supplementing the United Nations' Convention Against Transnational Organized Crime ("the Protocol) is "to prevent and combat the smuggling of migrants, as well as to promote cooperation among States Parties to that end, while protecting the rights of smuggled migrants." Defs.' Mot. to Dismiss Charges for Violation of International Law (Doc. 79), The Protocol (Exh. "1"), Art. 2. "Smuggling of migrants" is defined as "the procurement in order to obtain, directly or indirectly, a financial or other material benefit, of the illegal entry of a person into a State Party of which the person is not a national or a permanent resident." *Id.*, Exh. "1" at Art. 3, subsec. (a). "Th[e] Protocol shall apply, except as otherwise stated herein, to the prevention, investigation and prosecution of the offences established in accordance with article 6 of this Protocol, where the offences are transnational in nature and involve an organized criminal group, as well as to the protection of the rights of persons who have been the object of such

offences." *Id.*, Exh. "1" at Art. 4. The Protocol mandates "[e]ach State Party" to "adopt such legislative and other measures as may be necessary to establish as criminal offences, when committed intentionally and in order to obtain, directly or indirectly, a financial or other material benefit" various activities related to the smuggling of migrants, including providing false documents; acting as an accomplice; and acts which endanger or degrade migrants.[1] *Id.*, Exh. "1" at Art. 6, subsecs. 1–3. Article 6 concludes with the following admonition: "Nothing in this Protocol shall prevent a State Party from taking measures against a person whose conduct constitutes an offence under its domestic law." *Id.*, Exh. "1" at Art. 6, subsec. 4. The Protocol also provides for the return of smuggled migrants, and directs that it shall not be construed to "affect the other rights obligations and responsibilities of States and individuals under international law, including international humanitarian law and international human rights law" prior to the Protocol's authorization. Defs.' Mot. to Dismiss Charges for Violation of International Law (Doc. 79), Exh. "1" at Arts. 18 & 19.

"[T]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Air France v. Saks*, 470 U.S. 392, 396, 109 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985) (quoting *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431–32, 63 S.Ct. 672, 677–78, 87 L.Ed. 877 (1943)) (alterations in original). "The analysis must begin, however, with the text of the treaty and the context in which the written words are used." *Id.* (citations omitted).

Defendants assert that they are humanitarian aid workers who are entitled to protection from domestic criminal prosecution based on the Protocol. As an initial matter, although Defendants were on a self-proclaimed "search and rescue mission" for missing migrants, nothing in Defendants' factual basis suggests that the migrants were smuggled. Moreover, nothing in the plain language of the Protocol can be read to

---

[1] The Court is broadly summarizing the contents, and nothing herein shall be construed as a limitation on the contents of Article 6.

- 8 -

suggest that humanitarian aid work is a defense to a signatory State Party's ability to enforce its own domestic law. In fact, the Protocol's plain language reinforces the ability of signatories to enforce their own criminal laws. *See id.*, Exh. "1" at Art. 6, subsec. 4. Furthermore, the text of the Protocol demonstrates that it is not self-executing—the terms of the Protocol anticipate further action, and as such is "merely [an] executory agreement[] . . . and ha[s] no effect on domestic law absent additional governmental action." *Islamic Republic of Iran v. Boeing Co.*, 771 F.2d 1279, 1283 (9th Cir. 1985). Finally, there is nothing in the Protocol to support a private right of action by Defendants. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (delineating four-part test to determine a private right of action including whether the Protocol created a federal right in favor of Defendants).

Defendants additionally seek dismissal based upon the Government's alleged "outrageous conduct." Defendants allege a due process violation, because "[i]n bringing this case, the Government has flagrantly disregarded its obligations in truly outrageous ways" including "diregard[ing] [] its international obligations." As noted, *supra*, the Protocol is neither self-executing nor does it provide a private right of action for Defendants. Moreover, the Government enforcing its own domestic laws regarding permits for entrance into a wildlife preserve can hardly be considered "outrageous." Accordingly, Defendants' motion to dismiss is denied.

### D. Administrative Procedure Act ("APA")

Defendants assert that "[b]ecause Cabeza Prieta land management failed to follow the APA, the Service's policies and procedures, and the CFR when it amended the definitions of 'personal property' and 'abandonment in the application for the annual permit required for Cabeza Prieta, and because it created a special regulation for public use with following proper procedures, the 2017 Cabeza Prieta permit was not valid." Def.'s Mot. to Dismiss Count II Based on Due Process & Renewed Mot. to Compel (Doc. 91) at 6–7. From this, Defendants conclude that "[b]ecause the permits were invalid, Defendants cannot be criminally prosecuted for failing to obtain them." *Id.* at 7.

Defendants argue that the addition of specific examples of personal property or possessions in Paragraph 13 of the *Acknowledgment of Danger and Release, Hold Harmless Agreement, and Permit to Access Barry M. Goldwater Range (BMGR); Cabeza Prieta National Wildlife Refuge ("CPNWR"); Area "A" Portion of Sonoran Desert National Monument ("SDNM Area A")* modifies the definitions provided in Section 25.12, Title 50 of the Code of Federal Regulation, in violation of the Administrative Procedure Act ("APA"), as well as the Fish and Wildlife Service's procedures.[2] Defs.' Mot. to Dismiss Count II Based on Due Process & Renewed Mot. to Compel (Doc. 91) at 5–7.

The APA provides "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statue, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. As an initial matter, Defendants' have failed to show that there was a change "within the meaning of a relevant statute." 5 U.S.C. § 702. Paragraph 13 encapsulates the regulation prohibiting the abandonment of property. 50 C.F.R. § 27.93. That rule states that "[a]bandoning, discarding, or otherwise leaving any personal property in any national wildlife refuge is prohibited." *Id.* "To determine the meaning of a term in a federal regulation, we look to the common

---

[2] Paragraph 13 provides:

> Abandonment of personal property or possessions. I agree that I will not abandon personal property or possessions on BMGR/CPNWR/SDNM Area A. I am responsible for removing any and all personal property or possessions that I bring onto the BMGR/CPNWR/SDNM Area A. I agree to remove from the BMGR/CPNWR/SDNM Area A all personal property or possessions, including but not limited to, objects, debris, water bottles, water containers, food, food items, food containers, blankets, clothing, footwear, medical supplies, garbage, or trash generated by and/or used by me and/or my group. I understand that my permit may be suspended or revoked if I am found to be in violation of this section of this permit. I understand that I may be subject to judicial penalties to include fines, civil action, and/or debarment for failure to remove all personal property or possessions from BMGR/CPNWR/SDNM Area A.

meaning of the word." *Cleveland v. City of L.A.,* 420 F.3d 981, 989 (9th Cir.2005) (citations omitted). "When a statute does not define a term, a court should construe that term in accordance with its 'ordinary, contemporary, common meaning.'" *Id.* (quotations and citations omitted). Nothing about the examples given in Paragraph 13 changes this prohibition. "Personal Property" is not otherwise defined in the definitions for Subchapter C, as such the Court turns to Black's Law Dictionary's definition—"[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *See* 50 C.F.R. § 25.12; PROPERTY, Black's Law Dictionary (10th Ed. 2014), *available at* Westlaw BLACKS. Abandon is defined as "[t]o relinquish or give up with the intention of never again reclaiming one's rights or interest in." ABANDON, Black's Law Dictionary (10th Ed. 2014), *available at* Westlaw BLACKS. Providing permit applicants examples of the types of personal property that should not be abandoned does not alter this or any other relevant regulation. As such, Defendants are not entitled to judicial review under the APA. Further, criminal prosecution does not violate due process where it seeks to enforce Defendants admitted failure to obtain a valid permit. Defendants' motion (Doc. 91) shall be denied in its entirety.

### *E. Religious Freedom Restoration Act ("RFRA")*

Defendants seek dismissal of the Information pursuant to the RFRA. *See* Defs.' Mot. to Dismiss Charges Pursuant to the RFRA (Doc. 92). Although done in the context of Defendants' motion to compel, the Court broadly outlined the contours of RFRA in its June 1, 2018 Order (Doc. 77), and will not revisit it here. As discussed in Section III.A., *supra*, "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citations omitted). Accordingly, Defendants' Motion to Dismiss Charges Pursuant to the RFRA (Doc. 92) shall be denied without prejudice and with leave to re-urge at trial.

### *F. Selective Enforcement*

Defendants seek dismissal of the Information urging selective enforcement or prosecution. *See* Defs.' Mot. to Dismiss for Selective Enforcement, or Alternatively, for

Further Discovery Regarding the Same (Doc. 93). Like Defendants arguments regarding RFRA, the Court addressed the issue of selective prosecution in its June 1, 2018 Order (Doc. 77). As discussed in Section III.A., *supra*, "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citations omitted).

"A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). "To prevail on its claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Id.* (citations omitted). "To establish a discriminatory effect . . . , the claimant must show that similarly situated individuals . . . were not prosecuted." *Id.* at 1153 (quotations and citations omitted) (alterations in original). "To show discriminatory purpose, a plaintiff must establish that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Id.* (quotations and citations omitted) (alterations in original).

Defendants submitted supplemental authority in support of their motion, urging that *United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018), urging the Court to allow further discovery regarding selective enforcement. As an initial matter, in *Sellers*, the Court was concerned that the prosecution of drug dealers was focused on black dealers to the exclusion of all others so that there was selective prosecution. In the case before the Court, the only people failing to obtain permits and driving on restricted roads are associated in some way with "humanitarian groups." Consequently, Consequently, the enforcement is not selective, but rather against all individuals engaged in this behavior, rather than their association with any group. A review of the chart provided by the Defendants confirms that they are unable to point out any other persons similarly acting

| | |
|---|---|
| 1 | who are not being prosecuted. |
| 2 | Accordingly, Defendants' Motion to Dismiss for Selective Enforcement, or |
| 3 | Alternatively, for Further Discovery Regarding the Same (Doc. 93) shall be denied. |

### III. CONCLUSION

Based upon the foregoing, the Court finds it appropriate to allow Defendants to urge a RFRA defense at the time of trial, but denies all other motions in their entirety. Accordingly, IT IS HEREBY ORDERED that:

1) The versions of the following motions containing sealed exhibits shall be administratively CLOSED as duplicates.

   a) Motion to Dismiss Count II Based on Due Process & Renewed Motion to Compel (Doc. 80);

   b) Motion to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Doc. 81); and

   c) Motion to Dismiss for Selective Enforcement, or Alternatively, for Further Discovery Regarding Same (Doc. 83).

2) Defendants' Motion to Dismiss Counts 1 & 2 Based on Necessity and the Emergency Exception to 50 C.F.R. § 35.5 (Doc. 78) is DENIED;

3) Defendants' Motion to Dismiss Charges for Violation of International Law (Doc. 79) is DENIED;

4) Defendants' Motion to Dismiss Count II Based on Due Process & Renewed Motion to Compel (Doc. 91) is DENIED;

5) Defendants' Motion to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Doc. 92) is DENIED WITHOUT PREJUDICE; and

*///*
*///*
*///*
*///*
*///*

6) Defendants' Motion to Dismiss for Selective Enforcement, or Alternatively, for Further Discovery Regarding Same (Doc. 93) is DENIED.

Dated this 27th day of December, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge